# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

SAYEED SIDDIQUI,

    Plaintiff

v.

CVS PHARMACY, INC.,

    Defendant.

_____/

CASE NO.: _____

*Plaintiff Demands a Trial by Jury*

## COMPLAINT

Plaintiff, SAYEED SIDDIQUI, through his counsel, SW Law Group, PLLC, hereby respectfully files this Complaint against Defendant CVS PHARMACY, INC. Upon information and belief, Plaintiff alleges as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to 42 U.S.C., Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991), Pub. L. No. 102-166 ("Title VII"); the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1981; and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to race and national origin discrimination, disability discrimination, hostile work environment and retaliation.

2. This action is to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination against Plaintiff because of his race, national origin, and disability, and Defendant's retaliation against Plaintiff, all leading to Plaintiff's hospitalization and continued suffering.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and injunctive relief pursuant to Title VII, 42 U.S.C. §1981, and FCRA §760.10.

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

5. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendant and Plaintiff were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to file this action.

8. On or about August 15, 2019, Plaintiff dual filed his charge with the Equal Employment Opportunity Commission ("EEOC"), Charge number 510-2019-05897.

9. On or around June 16, 2020, the EEOC's Right to Sue Letter in reference to his EEOC charge was charge. Plaintiff received the EEOC's Right to Sue Letter shortly thereafter.

10. An EEOC filing automatically operates as a dual FCHR filing.

11. Plaintiff's Complaint is being filed within ninety (90) days of Plaintiff's receipt of the EEOC's Right to Sue letter.

## PARTIES

12. At all material times, Plaintiff SAYEED SIDDIQUI (hereinafter referred to as "Plaintiff" or "SIDDIQUI") is an individual man of Indian descent who is a resident of Miami-Dade County, Florida. Siddiqui has a disability as defined under the ADA – a severe heart condition that impacts his day to day activities.

13. At all material times, Defendant CVS PHARMACY, INC. (hereinafter referred to as "Defendant" or "CVS") is a For-Profit Corporation authorized to do business in Florida under the laws of the State of Florida.

14. Defendant CVS is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

15. Siddiqui was an employee of CVS for all relevant times material hereto.

## STATEMENT OF FACTS

16. In or around April 2013, Defendant hired Plaintiff as a Shift Supervisor.

17. Defendant hired Plaintiff with knowledge of his heart condition that required quadruple bypass heart surgery. Due to that condition, Siddiqui was unable to lift over ten (10) pounds.

18. In or around August of 2014, Siddiqui was transferred to the CVS in Weston Florida, with the expectation of being promoted to assistant manager given his qualification and experience.

19. Shanna Walker (hereinafter "Walker") was the store manager at the Weston CVS location.

20. Walker constantly ridiculed Siddiqui about the way "Indian people" ate, how "Indian people" used their hands and the customs/ culture of those of Indian descent.

21. Siddiqui was frustrated by the constant harassment from Walker, so Siddiqui complained to District Manager Phil Chen (hereinafter "Chen") about Walker's harassment and discrimination – all creating a hostile work environment for Siddiqui. Chen met with Siddiqui and Walker.

22. Rather than taking proper corrective actions, Chen instead told Siddiqui that he should just "let this go" and gave him the option to transfer to another store.

23. Siddiqui elected to transfer and was transferred to another high-volume store located in Davie, Florida, which is in Broward County, Florida.

24. The manager of the Broward County CVS location was Emlyn Seraphin (hereinafter "Seraphin") who was a friend of Walker.

25. Plaintiff was discriminated and retaliated against from the beginning of his time at the Davie location.

26. Seraphin constantly demeaned Siddiqui, scheduled him for undesirable night shifts, and issued baseless write ups and reprimands that were not rooted in any factual occurrences.

27. In or around 2015, Siddiqui requested to be transferred to the Miami District, so CVS transferred Siddiqui to their Miami Gardens, Florida, location.

28. At all times material hereto, the Miami Gardens store manager was Rawle Ferose.

29. While at the CVS located in Miami Gardens, Siddiqui applied for a promotion and was passed over without any stated reason or justification. Other coworkers who were less

qualified and who possessed less experience but were not of Indian descent and did not have any disabilities, applied and received promotions.

30. Siddiqui continually applied for promotions but was never given a promotion.

31. Siddiqui asked for a reason or justification for Defendant's failure to promote, but was never given any such reason or justification.

32. In or around mid 2018, CVS hired Ricardo Lopez (hereinafter "Lopez") as their District Manager for Siddiqui's district.

33. Siddiqui had a meeting with Lopez to complain about the discrimination, harassment, and hostile work environment. Lopez assured Siddiqui that he would take steps to remedy the situation and assured Siddiqui that he would be promoted.

34. In response to Siddiqui's meeting with Lopez, Ferose retaliated against Siddiqui by cutting his hours and scheduling him to work on weekends and interfering with his vacation requests.

35. Ferose was also outright hostile to Siddiqui. By way of example, on one occasion, Ferose held his middle finger up to Siddiqui while customers were present.

36. Shortly after Siddiqui's meeting with Lopez, Lopez informed Siddiqui that he had opened a requisition for the position of Store Operations Manager. Both Lopez and Ferose congratulated Siddiqui on being promoted to that position and told him he should see the requisition online within twenty-four (24) hours.

37. However, the acting store manager (Luis Vega (hereinafter "Vega")) refused to promote Siddiqui because Siddiqui did not speak Spanish and had undergone heart surgery.

38. Vega instead offered Jennifter Ajami (hereinafter "Ajami") the Store Operations Manager position. Ajami is a Hispanic female.

39. Siddiqui sent Lopez several emails and text messages advising him of Lopez's actions and requesting a remedy, but no corrective action was ever taken.

40. Two Shift Managers were promoted to Operations Shift Managers and another two employees were promoted to management positions, but Siddiqui was never promoted. None of the promoted employees were Indian nor did any have any kind of disability.

41. Despite being aware that Siddiqui had a heart condition was therefore unable to life more than ten (10) pounds, Vega began insisting Siddiqui unload supply trucks. Siddiqui professionally advised Vega that he was unable to lift more than ten (10) pounds, but Vega insisted Siddiqui unload trucks, which required lifting more than ten (10) pounds. There were multiple other tasks that Siddiqui could've completed instead.

42. As a further retaliatory action, Vega reduced Siddiqui's hours from forty (40) hours per week to twenty-eight (28) hours per week, which resulted in Siddiqui's loss of health insurance coverage through CVS.

43. The hours Siddiqui was scheduled to work were only nights and weekends.

44. The hours Vega had taken away from Siddiqui were given to employees from other CVS stores.

45. In 2019, Defendant did a district re-alignment and yet another district manager was brought in. Vega and Lopez contacted the new district manager to advise her that Siddiqui is not the right person for their plans and encouraged her to write Siddiqui up for requesting that the company communicate changes to all employees rather than just upper management, so that he could be apprised of the hierarchy.

46. In or around April of 2019, the discrimination, hostile work environment and retaliation had caused Siddiqui extreme anxiety and stress, which resulted in him being hospitalized.

47. The above are just some examples of the unlawful actions of the Respondent. Claimant believes he has been discriminated against in violation of Title VII of the Civil Rights Act of 1964.

### COUNT I: RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII

48. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

49. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2. [Section 703] states in relevant part as follows:

    > Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

50. Defendant discriminated against and harassed Plaintiff so pervasively as to constitute a modification in the terms and conditions of his employment.

51. Defendant further denied Plaintiff numerous promotions he was qualified for and instead promoted others who were less qualified and who hadn't worked for Defendant as long.

52. Further, Plaintiff's hours were manipulated, which caused him to lose health insurance with Defendant. Plaintiff was asked to do tasks that Defendant hired Plaintiff knowing Plaintiff could not complete due to his disability as a further discriminatory action and act of retaliation. Plaintiff could complete the essential functions and tasks of his employment.

53. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race and national origin.

54. The Defendant's conduct constitutes unlawful discrimination under the Act, and such actions were willful and malicious and, as a direct and proximate result of the Defendant's unlawful and discriminatory conduct, the Plaintiff has suffered damages and will continue to suffer irreparable injury and damages in the future, including, but not limited to:

    a) Damage to reputation, confidence and self-esteem;

    b) Loss of past and future income;

    c) Loss of future earning capacity;

    d) Loss of other fringe benefits;

    e) Stress, anxiety and emotional distress;

    f) Significant past and future pain and suffering; and

    g) Other financial losses.

55. The Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, costs and expenses related to this litigation.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT II: RETALIATION
### UNDER TITLE VII

56. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

57. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

58. Defendant discriminated against and harassed Plaintiff so pervasively as to constitute a modification in the terms and conditions of his employment. Defendant further denied Plaintiff numerous promotions he was qualified for and instead promoted others who were less qualified and who hadn't worked for Defendant as long.

59. Further, Plaintiff's hours were manipulated, which caused him to lose health insurance with Defendant. Plaintiff was asked to do tasks that Defendant hired Plaintiff knowing Plaintiff could not complete due to his disability. Plaintiff could complete all essential functions of his employment at all times material hereto.

60. Defendant discriminated against and harassed Plaintiff so severely as to cause Plaintiff's hospitalization due to extreme levels of stress, which exacerbated his heart condition.

61. When Plaintiff complained of the unlawful discrimination and harassment, Plaintiff's treatment worsened, and he was further passed over for promotions. No corrective action was taken when Plaintiff complained of the retaliation either.

62. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of his complaints of discrimination and harassment on the basis of his membership in a protected class.

63. The Defendant's conduct constitutes unlawful retaliation under the Act, and such actions were willful and malicious and, as a direct and proximate result of the Defendant's unlawful

and discriminatory conduct, the Plaintiff has suffered damages and will continue to suffer irreparable injury and damages in the future, including, but not limited to:

    a) Damage to reputation, confidence and self-esteem;

    b) Loss of past and future income;

    c) Loss of future earning capacity;

    d) Loss of other fringe benefits;

    e) Stress, anxiety and emotional distress;

    f) Significant past and future pain and suffering; and g. Other financial losses.

64. The Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, costs and expenses related to this litigation.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT III: FCRA §760.10
### DISCRIMINATION

65. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

66. Florida Statute Section 760.10(1)(a) provides that: "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

67. Defendant discriminated against and harassed Plaintiff so pervasively as to constitute a modification in the terms and conditions of his employment. Defendant further denied Plaintiff numerous promotions he was qualified for and instead promoted others who were less qualified and who hadn't worked for Defendant as long.

68. Further, Plaintiff's hours were manipulated, which caused him to lose work and health insurance with Defendant. Plaintiff was also only scheduled on nights and weekends.

69. As an attempt to further harass Plaintiff, Plaintiff was asked to do tasks that Defendant hired Plaintiff knowing Plaintiff could not complete due to his disability. Plaintiff could complete all essential functions of his employment at all times material hereto.

70. Defendant discriminated against and harassed Plaintiff so severely as to cause Plaintiff's hospitalization due to extreme levels of stress, which exacerbated his heart condition.

71. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of his race and national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

72. Defendant violated the FCRA by unlawfully discriminating against and harassing Plaintiff based on his disability, of which the Defendant were fully aware.

73. The Defendant's conduct constitutes unlawful retaliation under the Act, and such actions were willful and malicious and, as a direct and proximate result of the Defendant's unlawful and discriminatory conduct, the Plaintiff has suffered damages and will continue to suffer irreparable injury and damages in the future, including, but not limited to:

    a) Damage to reputation, confidence and self-esteem;
    b) Loss of past and future income;
    c) Loss of future earning capacity;

  d) Loss of other fringe benefits;

  e) Stress, anxiety and emotional distress;

  f) Significant past and future pain and suffering; and g. Other financial losses.

74. The Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, costs and expenses related to this litigation.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT IV: RETALIATION
### UNDER THE FCRA

75. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

76. Defendant discriminated and retaliated against Plaintiff in the terms and conditions of his employment. Defendant further denied Plaintiff numerous promotions he was qualified for in retaliation for his lawfully having engaged in statutorily protected activity and as a result of his complaints of discrimination (among other actions as described above).

77. When Plaintiff complained of the unlawful discrimination and harassment, Plaintiff's treatment worsened, and he was further passed over for promotions. No corrective action was taken when Plaintiff complained of the retaliation either.

78. Defendant's conduct constitutes unlawful retaliation under the Act, and such actions were willful and malicious and, as a direct and proximate result of the Defendant's unlawful and

discriminatory conduct, the Plaintiff has suffered damages and will continue to suffer irreparable injury and damages in the future, including, but not limited to:

  a) Damage to reputation, confidence and self-esteem;

  b) Loss of past and future income;

  c) Loss of future earning capacity;

  d) Loss of other fringe benefits;

  e) Stress, anxiety and emotional distress;

  f) Significant past and future pain and suffering; and

  g) Other financial losses.

79. The Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, costs and expenses related to this litigation.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT V: ADA DISABILITY DISCRIMINATION

80. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

81. The Americans with Disabilities Act, 42 U.S. Code § 12111 (2) states a "Covered Entity" includes "an employer, employment agency, labor organization, or joint labor-management committee."

82. The term "Disability" is defined under 42 U.S. Code § 12102 (1) to mean, "with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."

83. 42 U.S. Code § 12102 (3) explains what is considered "being regarded as having such an impairment":

> For purposes of paragraph (1)(C): (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

84. 42 U.S. Code § 12102 (2)(A) defines "Major Life Activities" to include, but not be limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

85. Regarding the Americans with Disabilities Act, 29 CFR 1630.2 (1)(o) explains the term "Reasonable Accommodations" stating:

> (1) The term reasonable accommodation means:
>
> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

14

> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.
>
> (2) Reasonable accommodation may include but is not limited to:
>
> (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

86. Together, 42 U.S. Code § 12102, 12111, and 29 CFR § 1630.2 establish an employer's duty with respect its employees with a disability and employees that are regarded as having such an impairment.

87. At all times relevant to this action, Plaintiff was and is a qualified individual with a disability within the meaning of the ADA in that Plaintiff is capable of performing all essential functions of his employment position with or without a reasonable accommodation.

88. At all times relevant to this action, Plaintiff was and is a man with a disability, who underwent serious heart surgery (quadruple bypass) – all of which was exacerbated by Defendant's treatment of Plaintiff, ultimately resulting in his hospitalization.

89. Defendant is prohibited under the ADA from discriminating against Plaintiff because of his disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

90. Defendant required Plaintiff to unload trucks, which requires lifting over ten (10) pounds – something Defendant was well aware Plaintiff could not do.

91. When Plaintiff again advised Defendant that he could not lift more than ten (10) pounds, no action was taken to provide Plaintiff with an alternative task as a reasonable accommodation. Instead, Plaintiff was met with further hostility.

92. Defendant violated the ADA by failing to accommodate and discriminating against Plaintiff because of Plaintiff's disability, of which the Defendant was fully aware.

93. The Defendant's conduct constitutes unlawful retaliation under the Act, and such actions were willful and malicious and, as a direct and proximate result of the Defendant's unlawful and discriminatory conduct, the Plaintiff has suffered damages and will continue to suffer irreparable injury and damages in the future, including, but not limited to:

    g) Damage to reputation, confidence and self-esteem;

    h) Loss of past and future income;

    i) Loss of future earning capacity;

    j) Loss of other fringe benefits;

    k) Stress, anxiety and emotional distress;

    l) Significant past and future pain and suffering; and g. Other financial losses.

94. The Plaintiff is entitled to an award of reasonable attorney's fees, expert fees, costs and expenses related to this litigation.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT VI: RACE AND NATIONAL ORIGIN
## DISCRIMINATION UNDER 42 U.S. Code § 1981

95. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein; specifically, paragraphs 16-47.

96. 42 U.S. Code § 1981 - Equal rights under the law states provides:

    (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
    (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

97. Plaintiff claims Defendant both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violation of 42 USC 1981.

98. Defendant constantly enforced a purposefully discriminatory pattern and practice of depriving individuals who were not Hispanic of the equal rights described therein, in further violation of 42 U.S.C. §1981.

99. Defendant discriminated against and harassed Plaintiff so pervasively as to constitute a modification in the terms and conditions of his employment. Defendant further denied Plaintiff numerous promotions he was qualified for and instead promoted others who were less qualified and who hadn't worked for Defendant as long.

100. Plaintiff made numerous inquiries and complaints about Defendant's failure to promote Plaintiff despite being more qualified and having worked for Defendant longer than the non-Indian employees who were promoted. Plaintiff also complained of the discrimination, harassment, and subsequent retaliation (as it was ongoing), but no

corrective action was taken. Instead, Defendant continually discriminated and retaliated against Plaintiff.

101. When Plaintiff advised Defendant of the discrimination, no corrective action was taken but rather Defendant retaliated against Plaintiff.

102. Plaintiff suffered damages as a result of Defendant's unlawful actions.

103. As a result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling Plaintiff to compensatory damages.

104. Defendant acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant for damages, including compensatory, consequential, punitive, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**[SIGNATURE BLOCK IS ON NEXT PAGE]**

Dated: Miami, Florida
September 14, 2020

Respectfully submitted,
**SW LAW GROUP, PLLC**

_/s/ Sarah Waters_
By: Sarah Waters, Esq.
FL Bar No. 118496
SW Law Group, PLLC
6900 Bird Road, #558075
Miami, Florida 33155
Tel. (561) 299-0084
sarah@sw-lawgroup.com